STENDER v. STENDER.

1. WILLS—INTENT—CONSTRUCTION.
    The first and most important rule to be observed in con-
    struing a will is to ascertain the intention of the testator
    and to give effect to that intention if it is legally possible;
    the entire instrument must be considered in ascertaining
    such intent.

2. SAME.
    Where decedent owned about $200,000 in real property at
    the time he executed his last will, by which he bequeathed
    to his brother and former partner all the residue of his
    personal property, including his cigar manufacturing busi-
    ness and excepting two bequests of small amounts of
    money, and to his brothers and sisters, in a succeeding
    clause, one-fifth of the rest, residue and remainder of his
    property of every nature and description, and where he
    afterwards sold three-fourths of his real property on con-
    tract, the intention to divide the real estate equally at
    the time of executing the testament being clear, the change
    in status and condition of the real property should not
    be held to diminish the interest of the other brothers and
    sisters in the property sold upon contract. The language
    of the later clause is also interpreted as including per-
    sonal property remaining after the first four clauses had
    been given effect and it is *held* that there was no evidence
    that the intention of the testator so changed as to deprive
    them of their shares.

3. SAME.
    It is a principle of construction that when certain things
    are enumerated and a more general description is coupled
    with the enumeration, the description is commonly un-
    derstood to cover only things of a like kind with those
    enumerated; the reason for such rule being that the
    testator is presumed to have had only those things in
    mind.

Appeal from Wayne; Mandell, J. Submitted June
10, 1914. (Docket No. 44.) Decided July 24, 1914.

Bill by Emil Stender and others against Carl Stender and Elmer W. Mulford, executor of the estate of Hugo H. Stender, deceased, *et al.*, for the construction of decedent's will. From a decree for complainants, defendants appeal. Affirmed.

*William E. Henze*, for complainants.

*E. W. Mulford*, for defendants.

BROOKE, J. The bill in this case is filed to secure a construction of the will of Hugo Stender, deceased. The will follows:

"1. I will and direct that all my just debts and funeral expenses be paid in full.

"2. I give and bequeath five hundred ($500.00) dollars to the Protestant Orphan Asylum of Detroit, Michigan.

"3. I give and bequeath five hundred ($500.00) dollars to the German Protestant Home for Orphan and Old People of Detroit, Michigan.

"4. I give and bequeath to my brother Carl of Detroit, Michigan, all the rest and remainder of my personal property, including my cigar manufacturing business.

"5. All the rest, residue and remainder of my property of every nature and description and wheresoever located, I give, devise and bequeath to the following:

"One-fifth thereof to my brother Carl of Detroit,

"One-fifth thereof to my brother William, formerly of Chicago,

"One-fifth thereof to my brother Emil, of Herford, in Westphalia, Germany,

"One-fifth thereof to my sister Thusnelda of Herford,

"One-fifth thereof to the children of my late half-sister Mathilda Huebner of Herford.

"In the event of the death of any one or more of the children of Mathilda Huebner before my demise, I will and direct that their survivors shall take the interest of such deceased. In the event of the death of any one or more of my brothers, or my sister before me, I will and direct that the interest of such

deceased, as in this paragraph set forth, shall pass to the survivors of them.

"6. I hereby appoint my brother Carl, and my attorney, Elmer W. Mulford, of Detroit, Michigan, or their survivor, executors of this my last will and testament, and having confidence in their ability and honesty I request the probate court to require them to file no more than a nominal bond.

"7. I hereby revoke all wills by me heretofore made.

"In witness whereof I have hereunto set my hand and seal this 29th day of June, 1911.

"HUGO H. STENDER."

The contest arises over the construction to be given to sections 4 and 5. It will be noted that the will is dated June 29, 1911. At that time the testator was possessed of a cigar manufacturing business, personal effects and money in the bank to the amount of about $1,100. At the same time he was possessed of real estate of the approximate value of $200,000. He died on November 21, 1912, one year and four months after the date of the execution of his will. Between the date of the will and the date of his death he sold upon land contract about three-fourths in value of his real estate. At the time of his death there was due him upon these contracts about the sum of $130,000. It is the claim of Carl Stender and Elmer W. Mulford, his executors, and of Carl Stender, personally, that Carl Stender takes under section 4 of the will all of the interest of the testator in said land contracts. This contention would result in giving to Carl Stender something like four-fifths of the entire estate of his deceased brother, while the other one-fifth would be divided among three surviving brothers and sisters and the heirs of a deceased half-sister. The contention of the appellees which prevailed in the court below was that a proper construction of section 4 of the will read in the light of section 5 thereof leads to the conclusion that it was the intention of the

testator by section 4 to give to his brother Carl only the cigar business named in section 4, the personal effects of said testator, and (possibly) the bank account used in connection with the cigar business. The testator was an unmarried man, and had been engaged in the cigar business in the city of Detroit for a great many years prior to his death. His brother Carl had occupied the position of clerk in his store for some 17 years. All of the devisees in the will, treating the heirs of Mathilda Huebner as representing their mother, were brothers or sisters of the testator, related to him in the same degree, and were natural objects of his bounty in an equal degree.

On the part of the appellants it is contended that land contracts are personal property (*Bowen* v. *Lansing,* 129 Mich. 117 [88 N. W. 384, 57 L. R. A. 643, 95 Am. St. Rep. 427]), and must pass as such under the will; that the will takes effect at the time of testator's death, and not at the time of its making (*Union Mutual Ass'n* v. *Montgomery,* 70 Mich. 587, and cases cited [38 N. W. 588, 14 Am. St. Rep. 519]) ; and that the sale of the real estate after the date of the will operates to revoke the will *pro tanto,* and the proceeds of such sale must pass to the legatees, residuary or otherwise, as personal property. *In re Sprague's Estate,* 125 Mich. 357 (84 N. W. 293).

As to the general soundness of the legal principles contended for by appellant's counsel there can be no doubt. We think, however, that there are certain rules of construction which are paramount and which should be conclusive against the contention of appellants in the instant case. The first and most important rule to be observed in construing a will is to ascertain the intention of the testator and to give effect to that intention if it be legally possible. Of course, that intention must be gathered from the instrument itself. But in determining what the real intention of the testator was, the entire instrument

must be examined and all of its terms and language must be given due consideration. Bearing this in mind, let us examine the language of section 4:

"I give and bequeath to my brother Carl of Detroit, Michigan, all the rest and remainder of my personal property, including my cigar manufacturing business."

By sections 2 and 3 the testator had provided for legacies amounting in all to $1,000. At the time the will was made, it is shown that he had a bank account of about $1,100, and was the owner of a cigar manufacturing business, the value of which the record does not disclose. Aside from this he had at that time no personal property, except doubtless such wearing apparel and articles of personal use as are ordinarily possessed by one in his station. He was an unmarried man, and the five brothers and sisters to whom he devised his estate were his nearest relatives. If we agree with the contention of appellants, we are at once met with the query as to what meaning shall be given to the words, "including my cigar manufacturing business," contained in section 4. If it was the intention of Hugo Stender to give to his brother Carl all the personal property of which he died possessed, except the $1,000 theretofore bequeathed, the words are absolutely meaningless. We cannot suppose that the testator used these words without intending that they should have some bearing upon the business he was about. It is our conclusion that the term "personal property" as contained in clause 4 of the will was used by the testator in its ordinary and popular sense. In its broadest legal significance that term includes every subject of ownership, except land or an interest in land, but popularly it is frequently used in a more restricted sense, and is meant to include goods and chattels, tangible things, the subjects of personal use. It is most commonly applied in a popular way to goods and chattels. That the testator in the in-

stant case used it with this restricted meaning we
believe. This belief is strengthened by the fact that
after the words, "all the rest and remainder of my
personal property," and as indicating the character
of the personal property intended to be disposed of,
he said, "including my cigar manufacturing busi-
ness."

It is a cardinal principle of construction that where
certain things are enumerated and a more general de-
scription is coupled with the enumeration, that de-
scription is commonly understood to cover only things
of a like kind with those enumerated. The reason for
this rule is that it is presumed that the testator had
only those things in mind. *Given* v. *Hilton,* 95 U. S.
591; 1 Redfield on Wills (2d Ed.), p. 445, (1st Ed.),
p. 441; 1 Jarman on Wills (6th Ed.), p. 735; *Bills*
v. *Putnam,* 64 N. H. 554 (15 Atl. 138); *Benton* v.
*Benton,* 63 N. H. 289 (56 Am. Rep. 512); *Dole* v.
*Johnson,* 3 Allen (Mass.), 364. Further strength is
lent to the foregoing view when we consider the terms
of section 5 of the will. It is of course clear, if the
contention of appellants is to obtain, that when sec-
tion 4 had been written, the testator had divested him-
self of all of his personal estate. He therefore had
nothing further upon which his will could operate
except real estate. Instead of limiting clause 5 to a
devise of real estate, it is so worded as to indicate that
the testator believed that, after clauses 2, 3, and 4
had been complied with there would yet remain per-
sonal as well as real estate subject to distribution.
The language used indicates this belief beyond perad-
venture:

"All the rest, residue and remainder of my property
of every nature and description and wheresoever lo-
cated, I give, devise and bequeath to the following."

It is impossible to believe that this language would
have been used by the testator had he intended it to

operate upon real estate only. Giving the indicated construction to clause 4 permits us to give a reasonable meaning to all of the language contained in clause 5, which would be impossible if clause 4 is held to have disposed of all of his personal estate. While it is true that the will speaks from the death of the testator and not from its date, it is, we think, equally true that the intention of the testator may often be determined from facts and circumstances existing at the date of the will. The whole scheme of the will indicates, in our opinion, a determination on the part of the testator to recognize his obligation to his brother Carl through the years when they had worked together in the cigar manufacturing business by a bequest to Carl of that business, and the further intention, when dealing with the corpus of his estate, to treat his five brothers and sisters with exact equality. The record is barren of any evidence tending to indicate a change in the intention so plainly apparent from the will and the condition of his estate at the time the will was made. Had the testator died prior to February, 1912, and he did die in November of that year, his five brothers and sisters would have received, according to the terms of his will, approximately $40,000 each. No reason is advanced to show that his intention to so dispose of his estate was changed so that one brother should receive approximately $160,000 and the other four brothers and sisters only $10,000 each.

A case very similar to the one at bar in its facts is *Bills* v. *Putnam, supra.* It involves the identical question. There the court said:

"The question in this case arises from a change in the condition of the property after the execution of the will. There is no evidence of any change in the relations of the testatrix and the residuary legatees to indicate or account for an intention on her part to change the apportionment of her property between

them. The evidence of a change of purpose in its distribution is furnished solely by the fact of a sale of a large portion of her real estate by the testatrix, and allowing her will to remain unchanged. It is not reasonable to believe that the testatrix, without cause, intentionally changed the disposition of her property so materially as to reduce the shares of two of the residuary legatees to one-fourth of the amount provided for by the will, as the property then was, with a corresponding increase to the shares of the other two. The absence of evidence showing a motive for changing the operation of the will upon the property is evidence upon the question whether any change was intended by the testatrix.

"It is to be assumed that the testatrix understood the terms and conditions of the will and their legal effect when it was executed. Its provisions, applied to the property at that time, show an intention to divide the bulk of it equally between the four residuary legatees named in the will. Her property then consisted of real estate of the value of $2,900; her wearing apparel, household furniture, and like property, which she was then using in her daily life, and a note against a son-in-law for about $40. The will provides that the wearing apparel, household furniture, and personal property of every name, nature, and description, be equally divided between the two daughters; that legacies of $200 each be paid to two grandsons, and a nominal legacy to a son; and that the rest of the property, it now being in real estate, be equally divided between the two daughters, the plaintiff and a grandson. By the subsequent sale of a large part of the real estate it was converted into personal estate, and consequently transferred from the operation of the residuary clause to the special bequest to the daughters, unless the words, 'personal property,' as used in the bequest to the daughters, are understood as used in a special and restricted sense. The determination of the question raised depends upon the construction to be given to the phrase 'personal property.' If the language is susceptible of more than one construction, in what sense did the testatrix use it?

"The interpretation of a will is the ascertainment of the testator's intention. That intention is gather-

ed not only from the words of the particular clause under construction, but as well from the language of the whole will, from the relations of the testator to the persons who are the objects of his bounty, and from surrounding circumstances. *Kennard* v. *Kennard*, 63 N. H. 303, 310. But little aid is to be derived from a resort to formal rules, or a consideration of judicial determinations in other cases apparently similar. It is a question in each case of the reasonable interpretation of the words of the particular will, with the view of ascertaining through their meaning the testator's intention. *Robinson* v. *Portland Orphan Asylum*, 123 U. S. 702, 707 [8 Sup. Ct. 327] ; *Bosley* v. *Bosley's Executrix*, 14 How. [U. S.] 390, 397."

The learned circuit judge decreed to Carl Stender, under clause 4, $1,100, that being the amount of the commercial bank account in connection with the cigar manufacturing business, the time the will was made. In this, we think, he was in error. But, inasmuch as the other heirs have not appealed from the decree made and do not question its propriety in that regard, that question requires no consideration. Upon the main point in issue in the construction of the two clauses in question, we believe he reached a proper conclusion, and the decree is affirmed, with costs.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.