KIRSHER *v.* TODD.

1. WILLS—CONSTRUCTION—INTENT.

The primary rule for the construction of a will is to ascertain the true intention of the testator, which must be ascertained from a consideration of all its provisions in the light of the circumstances surrounding the testator at the time it was made, and his relations with the several objects of his bounty.

2. SAME—CONSTRUCTION—PARTIAL INTESTACY—PRESUMPTION.

The presumption is always against partial intestacy, and a will, if legally possible, should be so construed as to avoid that effect.

3. SAME—CONSTRUCTION—ADEMPTION—SALE OF REAL PROPERTY.

Land purchased with the money received by testatrix, after the execution of the will, from the sale of a farm spe-

cifically devised to defendant, was not devised.[1]  *Stender* v. *Stender*, 181 Mich. 648 (148 N. W. 255).

4. SAME—INTENT—INJUSTICE—EQUITY.

'But the court of equity will not allow the manifest intention of testatrix to be defeated by her ignorance of the rule of law that the sale of a specifically devised piece of real estate works a revocation of such devise.

5. DEEDS—CANCELLATION OF INSTRUMENTS—FRAUD.

Where plaintiff and her mother entered into a contract of settlement wherein the portion of her mother's estate to be willed to her was fixed, and in the distribution of the mother's estate land in which it was not intended she should have any interest was erroneously assigned to her, a quitclaim deed of said land to her sister, carrying into effect the provisions of said contract and will, should not be set aside on the ground of fraud.

Appeal from Allegan; Cross, J. Submitted October 18, 1916. (Docket No. 114.) Decided March 30, 1917.

Bill by Eldora A. Kirsher against Cornelia J. Todd for a decree requiring defendant to reconvey to plaintiff a one-half interest in certain real property and for the cancellation of a certain deed. From a decree for plaintiff, defendant appeals. Reversed.

*Wilkes & Stone* (*Jewell & Smith*, of counsel), for appellant.

*Stewart & Hextell* and *Chas. Thew*, for appellee.ᐧ

In the year 1899 one Elijah Jones died at Des Moines, Iowa, testate. By his will he devised and bequeathed his entire estate to his wife, Eliza A. Jones. He had two daughters, the plaintiff, Eldora A. Kirsher, and the defendant, Cornelia J. Todd. Immediately after his death his daughter, the plaintiff herein, contested the probating of said will. Said contest continued until April 2, 1902, and in the meantime plaintiff and her husband started several other

[1]As to ademption of specific legacy or devise by change in or substitution of other for property bequeathed, see note in 40 L. R. A. (N. S.) 553.

suits against Eliza A. Jones. On said date plaintiff and her mother entered into the following contract:

"Know all men:

"That whereas, Eldora A. Kirsher has heretofore brought and has now pending a suit to set aside the will of Elijah Jones, deceased, probated in this court, on the 2d day of January, 1900; and

"Whereas, she has other suit or suits pending against Eliza A. Jones; and

"Whereas, Lawrence Kirsher has a suit or suits pending against Eliza A. Jones; and

"Whereas, Eldora A. Kirsher has a suit or suits pending against Charles F. Keeling; and

"Whereas, Lawrence Kirsher has a suit or suits pending against Charles F. Keeling; and

"Whereas, Eldora A. Kirsher has a suit or suits pending against H. E. McGriff; and

"Whereas, said Eldora A. Kirsher, by and in her own behalf, and Lawrence Kirsher, by and in his own behalf, claim to have other causes of action against Eliza A. Jones and Charles F. Keeling and H. E. Mc-Griff; and

"Whereas, Eliza A. Jones has a suit pending in the district court of Polk county, Iowa, to enjoin Eldora A. Kirsher and Lawrence Kirsher from going on to or taking possession of the south seventy (70) acres of the east half (½) of the southeast quarter (¼) of section thirty-two (32) township seventy-eight (78) range twenty-three (23) west of the 5th P. M. Iowa; and

"Whereas, she claims to have the right to dispossess said Kirshers from the north ten acres of said eighty (80) acres of land above described; and

"Whereas, Eliza A. Jones has executed a will devising and bequeathing to Eldora A. Kirsher certain rights in and to the eighty (80) acres of land above described; and

"Whereas, she is possessed of other lands and personal property:

"Now, therefore, for the purpose of settling all of the disputes or causes of action now existing by and between the parties to said suit or suits or named herein, or growing out of or in any way connected with each other, and for the purpose of amicably set-

tling and adjusting all and singular of the rights of all parties hereto or herein named, Eliza A. Jones hereby agrees to and with Eldora A. Kirsher that she shall have the possession, use, and control of the east half (½) of the southeast quarter (¼) of section thirty-two (32), township seventy-eight (78), range twenty-three (23) west of the 5th P. M., Iowa, from the day and date of this contract to the day and date of the death of Eliza A. Jones, subject only to the contract of Charles F. Keeling to the south sixty (60) acres thereof for the year 1902, as per lease dated February 11, 1902, which contract said Eliza A. Jones hereby assigns and transfers to Eldora A. Kirsher.

"Eliza A. Jones further agrees to dismiss the suit she has now pending against Eldora A. Kirsher and Lawrence Kirsher, and releases and receipts in full both of them for all matters and things she may have against either or both of them to this date. She further agrees to so modify the will already executed by her, and to execute in lieu thereof, one devising and bequeathing to Eldora A. Kirsher the south (½) half of the southeast (¼) of section thirty-two (32), township seventy-eight (78), range twenty-three (23) west of the 5th P. M. Iowa, and the sum of five hundred dollars ($500.00) to be paid out of the remainder and residue of the estate she may leave at the time of her death.

"In consideration of the foregoing provisions and agreements on the part of Eliza A. Jones, Eldora A. Kirsher, and Lawrence Kirsher, and each for himself, agree to and do hereby dismiss all actions in the district court of Polk county, Iowa, either to set aside the will of Elijah Jones, deceased, or by or against Eliza A. Jones and Charles F. Keeling and H. E. McGriff, and hereby acknowledge satisfaction and receipt in full for all claims each or both may have by or against either of the parties above named, this to be a settlement and satisfaction in full of all claims whatsoever against either of said parties.

"Eldora A. Kirsher further acknowledges the validity of the will of Elijah Jones, deceased, probated in this court on the 2d day of January, 1900, and further agrees that any disposition Eliza A. Jones may make of any of her property other than the

eighty (80) acres of land and the five hundred dollars ($500.00) hereinbefore set forth shall be binding upon her and preclude her from any participation in the distribution made thereof.

"The suits now pending are to be dismissed at the cost of plaintiff, save and except the case of *Charles F. Keeling* v. *Eldora A. Kirsher* and *Lawrence Kirsher*, wherein judgment was entered in favor of the plaintiff and the costs taxed to plaintiff and defendants, which case is now pending in the Supreme Court of Iowa, and is to be dismissed, the costs to be taxed as in the court below,

"It is further agreed that Eldora A. Kirsher and Lawrence Kirsher shall permit Charles F. Keeling, present tenant of Eliza A. Jones, to have peaceful and uninterrupted possession of the south sixty (60) acres of the east half ($\frac{1}{2}$) of the southeast quarter ($\frac{1}{4}$) of section thirty-two (32), township seventy-eight (78), range twenty-three (23) west of the 5th P. M., Iowa; and she further agrees that, if she fails to pay the taxes on said land before the same is sold therefor, Eliza A. Jones may pay the same if she desires, and the amount of said payment shall be a special lien on all of said land for all taxes so paid at 6 per cent. interest from the date of payment, and said lien may be enforced the same as a mortgage on all of her interest therein.

"Eldora A. Kirsher further agrees that, if she brings any suit or suits against Eliza A. Jones on any of the matters herein settled and adjusted or heretofore existing, she hereby forfeits all her right and interest in this contract and in and to the eighty (80) acres of land above described, and such interest as she may have therein shall cease and determine.

"Signed in duplicate the 2d day of April, 1902.

"ELDORA A. KIRSHER.
"LAWRENCE KIRSHER.
"ELIZA A. JONES."

Duly acknowledged.

On the 18th of April, 1902, 16 days after the execution of the contract, Eliza Jones made the following will:

"Know all men by these presents:

"That I, Eliza A. Jones, widow of Elijah Jones, deceased, of Allen township, Polk county, Iowa, being advanced in years, yet of sound and disposing mind and memory, do hereby make, publish, and declare this to be my last will and testament, hereby revoking all former wills made by me, together with the codicils thereto attached, if any.

"I devise, bequeath and dispose of all the property I now have, or may own and possess at the time of my death, in the manner and form as follows, that is to say:

"Paragraph 1. I direct that all my just debts and funeral expenses be first paid.

"Par. 2. I give and devise to my daughter, Eldora A. Kirsher for her sole use and benefit the east half (½) of the southeast quarter (¼) of section thirty-two (32), township seventy-eight (78) north of range twenty-three (23) west of the 5th P. M., Polk county, Iowa, she to have and to hold the same to herself and her heirs forever.

"Par. 3. I give and bequeath to my daughter, Eldora A. Kirsher, to be paid out of the proceeds of the personal property belonging to my estate, or such other portion of my estate not designated and described in paragraph two (2) hereof, the sum of five hundred dollars ($500.00), payment of the same, however, not to be required of the executrix of this will at an earlier date than one year from the day and date of my death.

"Par. 4. I give and devise to my daughter, Cornelia J. Todd, for her sole use and benefit, the south fractional half (½) of the southwest quarter (¼) of section thirty (30) ; also the west fractional half (½) of the northwest quarter (¼) of section thirty-one (31), all in township seventy-eight (78) north of range twenty-three (23) west of 5th P. M., Polk county, Iowa, she to have and to hold the same to herself and her heirs forever.

"Par. 5. I give and bequeath to my daughter, Cornelia J. Todd, all of the remainder and residue of my personal property at the time of my death, she to have all of my personal property absolutely in her own right, as well as the real estate described in paragraph

four (4), subject only to the payment of the five hundred dollars ($500.00) payable to my daughter Eldora A. Kirsher, as set out in paragraph three (3) hereof.

"Par. 6. I fully appreciate and understand that the disposition of my property herein made may not, to those not acquainted with the circumstances of my family relations, seem fair and equal; but my daughter, Mrs. Cornelia J. Todd has not received anything from me and has always treated me as a daughter should treat her mother, while, my daughter, Mrs. Eldora A. Kirsher, has, to a very large extent, received the use of the eighty (80) acres farm described in paragraph two (2) hereof, and has harassed me with litigation to set aside the will of her father, Elijah Jones, and compelled me to incur large expense in defending said suits, and otherwise caused me untold annoyance and vexation; and on account of this experience in this connection, and to comply with the terms of the contract made and entered into by me with her and her husband on the 2d day of April, 1912, I make the disposition of my property as above.

"Par. 7. Having faith and confidence in the good judgment and integrity of my daughter, Cornelia J. Todd, I hereby nominate and appoint her as executrix of this, my last will and testament.

"In testimony whereof I have hereunto subscribed my name at Des Moines, Polk county, Iowa, this 18th day of April, 1902.

"ELIZA A. JONES.

"Be it remembered that on this 18th day of April, 1902, the foregoing instrument was, on the day and date thereof subscribed by Eliza A. Jones in our presence, and she at that time declared the same to be her last will and testament; and by her request and in her presence, and in the presence of each other we now sign our names as witnesses to said instrument, and write opposite our signatures our respective places of residence, at Des Moines, Iowa, on the day last above written.

"Witness:   A. A. McLAUGHLIN.
        "Residence:   Des Moines, Iowa.
"Witness:   A. I. LEE.
        "Residence:   Des Moines, Iowa.
"Witness:   HOWARD J. CLARK.
        "Residence:   Des Moines, Iowa."

At the time said will was made Eliza Jones lived upon the premises in Iowa described in paragraph 4 of the will. In the year 1906 said Eliza A. Jones sold the premises described in said paragraph 4 for the sum of $14,628. She then removed from Iowa and came to Michigan, where she resided with her daughter the defendant, Cornelia J. Todd, up to the time of her death on August 14, 1912. Of the money she received from her Iowa farm Eliza A. Jones gave to defendant upon her arrival in Michigan a considerable sum, and she expended $5,500 in the purchase of an 80-acre farm in Allegan county, Mich. At the time of the death of Eliza Jones she was seised of the Allegan county farm. On August 26, 1912, the will of Eliza Jones was filed for probate in the probate court in the county of St. Clair, Mich. On November 11, 1912, the will was admitted to probate, and Cornelia J. Todd was appointed executrix. On the 12th day of May, 1913, the final account of Cornelia J. Todd was allowed, and the final order of distribution entered as follows:

"To Cornelia J. Todd and Eldora A. Kirsher in equal shares said real estate being described as follows: [The Allegan County farm.]

"To Cornelia J. Todd the residue of the personal estate in accordance with the will of the said Eliza A. Jones, deceased. It is further ordered that the executrix stand discharged, her bond canceled and the estate closed."

In the meantime, and on August 16, 1912, defendant had advised her sister, the plaintiff, of her mother's death, and on August 26, 1912, defendant wrote a further letter to plaintiff describing the last hours of the mother. With reference to the estate she wrote as follows:

"As to the cemetery lots, I thought it would be nice for you and Lawrence have the lot where father is buried, and Will and I the other one in Michigan,

where mother is buried. Mother's death date will need to be put on the monument, and then there will be room for yours and Lawrence's names, too. As to the estate, we can do that up easily. You can sign a quitclaim deed to the eighty here in Michigan, and I will sign a quitclaim deed to the lower farm eighty, and deposit the five hundred dollars in the bank to be delivered by them to you when you sign the papers. This will be far more seemly for us as sisters, and will do away with a long delay. I think the provision of the contract was that there was a year in which to pay the five hundred, but if we can get the papers fixed up and signed, you may as well have it right away. We are sending the papers to the Des Moines Savings Bank, where you can go in and sign up and draw your money. These are certificates of deposit which will mature December 14, 1912. If you leave them until that time, you will have ($520.00) five hundred and twenty dollars, if you cash them now, you, of course, will draw no interest. Of course, you can do as you like.

"This plan, no doubt, will be highly satisfactory to you, and I believe is right all around. Let me know if I shall send you the trunk of clothing together with the pictures.

"Lovingly your sister,<br>"CORNELIA J. TODD."

A third letter was written by defendant to plaintiff on September 18, 1912, containing the following:

"I have not received the papers yet. I wish you would sign and forward them right away, for I want to go ahead and settle up the expenses right away. The doctor, nurse, the undertaker all have to be paid, and unless the papers are signed and sent, I will have to probate the will. The will provides that the five hundred due you shall not be paid for a year. I, of course, would probate it right here in St. Clair county. But in the condition that you and Lawrence are, I would prefer that you have your money before the winter. The judge of probate here said that after our quitclaim deeds were signed, and the papers returned, he would declare the estate settled by 'agree-

ment' and we would not have to wait a year as we would in the other case."

On October 18, 1912, defendant wrote plaintiff:

"The deed came while I was gone."

And on April 5, 1913, defendant wrote plaintiff, among other things, as follows:

"The will has been allowed. It was made in accord with the contract which you and mother entered into when you quit lawing. You have the five hundred dollars called for in the contract which I sent you through the bank and for which I have the receipt, I have your quitclaim deed and you have mine, and we have done it all without any lawing and I believe with the kindliest feelings on both sides. Of course, there has had to be the regular court proceedings as there has to be in any estate, and when I get things all paid up, I will send you an itemized account for I do not wish to conceal anything from you."

On September 30, 1912, plaintiff executed a quitclaim deed to defendant of the 80 acres in Allegan county. This deed was recorded on February 7, 1913. The bill of complaint herein was filed on August 28, 1915, in which the plaintiff prays that the defendant be required to reconvey to her an undivided one-half interest in the Allegan county farm, and that the quitclaim deed executed by the plaintiff to defendant of her interest in said farm be set aside, canceled, and held for naught. The defendant, answering, set up the contract made between Eliza Jones, her mother, and the plaintiff, her sister, and the will of Eliza Jones, the mother, and prayed for the dismissal of the bill. The trial judge, in effect, held that the quitclaim deed given by plaintiff to defendant was procured by fraud, and that it should be set aside and held for naught, and further:

"The testatrix having sold the 160 acres of land in Iowa, she thereby revoked the provisions of the will concerning the same, and not having made any dis-

position, by will or otherwise, of the farm described in the bill of complaint, the plaintiff, as heir at law of the testatrix, is entitled to an undivided one-half interest therein."

From a decree entered in accordance with these findings, the defendant appeals.

BROOKE, J. (*after stating the facts*). It is to be noted that at the time the order for distribution was made, by the terms of which the plaintiff was given an undivided one-half of the Allegan county farm, the defendant had in her possession and of record a quitclaim deed from the plaintiff to her of all plaintiff's interest in said farm. Assuming the validity of said deed, the construction given the will in the probate court for the county of St. Clair, whether right or wrong, was of no consequence to defendant. That order of distribution was made on May 12, 1913. Plaintiff was advised of the probating of the estate on April 5, 1913. She filed her bill of complaint on August 28, 1915, upwards of two years after the allowance of the final account of the defendant as executrix of the mother's estate, her discharge as such executrix, and the making of the order assigning the residue of the estate. Defendant's right to appeal from the order assigning the residue was lost, apparently through her reliance upon the deed in question. It is assumed by both parties to the controversy now before the court that the will of Eliza Jones must be construed, and it was construed in the court below where it was held that the sale of the 160 acres in Iowa by Eliza Jones in her lifetime revoked paragraph 4 of the will of the said Eliza Jones, and that the land purchased by Eliza Jones in Allegan county was undisposed of by said will, and therefore descended to plaintiff and defendant in equal shares, they being the sole heirs at law of Eliza Jones.

At the outset it is proper to consider the circumstances surrounding the testatrix at the time of the execution of the will and the relations which existed between herself and her two daughters before and subsequent to that time. Aside from recitations and expressions contained in the contract and will, there is abundant testimony in the record to establish the fact that the testatrix, Eliza Jones, had been harassed by her daughter, the plaintiff, and by the husband of her daughter, for several years with litigation over the estate left by Elijah Jones, the father of the parties hereto. By reason of the conduct of the plaintiff toward her mother a complete estrangement followed, but one or two formal calls being made by one or the other up to the time that Eliza Jones sold her Iowa property and moved to Michigan. She left without paying or receiving a farewell visit from the plaintiff, her daughter in Iowa, and from that time (1906) until her death in 1912 no communication was had between the two. On the other hand, the relations between the defendant and her mother, Eliza Jones, were always of the friendliest character, and the defendant seems to have given to her mother during the last years of her life, and particularly during her final illness, which was prolonged, that care, love, and sympathy which a dutiful daughter always owes to her mother. That the feeling of bitterness existing between Eliza Jones and her daughter, the plaintiff, continued up to the time of her death is abundantly shown by the record. The will itself was made but a few days after the contract, and was a concession wrung from Eliza Jones by her daughter the plaintiff as the purchase price of peace. In that will the plaintiff secured a greater consideration and more property from her mother than her mother desired to give her.

The primary rule of construction is to ascertain the

true intention of the testator. That intention must be ascertained from a consideration of all the provisions of the will itself and in the light of the circumstances surrounding the testator at the time the will was made and his relations with the several objects of his bounty. Having so ascertained his intention, it is the duty of the court to give that intention effect if that be legally possible. This court has so frequently enunciated these principles that a citation of authorities in this State in support thereof is unnecessary.

Coming to a consideration of the will itself, we find the opening paragraph to be as follows:

"I devise, bequeath and dispose of all the property I now have, or may own and possess at the time of my death, in the manner and form as follows, that is to say."

Paragraph 2 devises to the plaintiff the 80 acres in Iowa which was then and had for many years been occupied by the plaintiff.

Paragraph 3 bequeaths to the plaintiff the sum of $500 to be paid out of such portion of the estate not designated and described in paragraph 2.

Paragraph 4 devises the farm of 160 acres in Iowa then occupied by the testatrix to the defendant.

Paragraph 5:

"I give and bequeath to my daughter, Cornelia J. Todd, all of the remainder and residue of my personal property at the time of my death, she to have all of my personal property absolutely in her own right, as well as the real estate described in paragraph four (4), subject only to the payment of the five hundred dollars ($500.00) payable to my daughter Eldora A. Kirsher, as set out in paragraph three (3) hereof."

Paragraph 6 is an unusual and illuminating resume of the reasons which impelled the testatrix to make her will as she did. There she states that her daugh-

ter Mrs. Todd has never had anything from her, but has always treated her as a daughter should, while her daughter the plaintiff she charges with having had possession and use of the 80 acres devised to her in paragraph 2, and that, aside from that, her said daughter has harassed her with litigation, causing her to incur large expense and to bear untold annoyance and vexation.

No one can read this will in the light of the contract made a few days before its execution between the testatrix and her daughter the plaintiff and in the light of the evidence contained in this record as to the relations existing between the plaintiff and her mother, up to the time of the death of her mother, without reaching the conclusion that it was the intention of the testatrix to give to the plaintiff from her estate the 80 acres devised to her in paragraph 2 of the will, the $500 bequeathed to her in paragraph 3 of the will and *no more*. If this manifest intention is thwarted, it must be because some supervening rule of law prevents its accomplishment.

The presumption is always against partial intestacy, and a will, if legally possible, should be construed so as to avoid that effect. *In re Ives' Estate,* 182 Mich. 699 (148 N. W. 727), and cases there cited. In the case at bar we are not left to presumption for the testatrix herself undertook by her will to "devise, bequeath, and dispose of all the property I now have or may possess at the time of my death."

It is the claim of the plaintiff that the sale of the Iowa farm by the testatrix revoked paragraph 4 of the will, and with this contention the learned circuit judge agreed. We have lately in this court considered a case involving this identical question. *Stender* v. *Stender,* 181 Mich. 648 (148 N. W. 255). We there held that a bequest of personal property did not carry with it a sum received by the testator after the exe-

cution of the will from the sale of real estate which he had otherwise devised in his will. See, also, *Rue* v. *Connell,* 148 N. C. 302 (62 S. E. 306), and *Bills* v. *Putnam,* 64 N. H. 554 (15 Atl. 138). Section 4 of the will in terms devises the 160 acres in Iowa to defendant. A portion of the sale price of that farm was paid over to defendant in the lifetime of the testatrix, and a portion was invested in the Allegan county farm. Nothing can be clearer than that it was the intention of the testatrix that the plaintiff should inherit nothing from the Iowa farm of 160 acres. Should this manifest intention be defeated because the testatrix was in ignorance of the generally applicable rule of law that the sale of a specifically devised piece of real estate works a revocation of such devise? In *Stender* v. *Stender, supra,* we refused to permit such an injustice, and in the case at bar will adhere to the rule there announced. The plaintiff is now in a court of equity; she appeals to the conscience of the court to right what she claims to have been a wrong perpetrated upon her; she asserts that the quitclaim deed executed by her was procured by the defendant by fraudulent means and without consideration.

From a careful perusal of the record we are satisfied that the claim of fraud is not made out. While the plaintiff claims to have been ignorant of the terms of her mother's will, she knew the conditions of the contract executed by her mother and herself, and she knew when she received the quitclaim deed from her sister to her of the 80 acres of land in Iowa and the $500, that she was getting from her mother's estate the amount which had been provided for in that contract. If the quitclaim deed is permitted to stand and operate as a valid conveyance of the plaintiff's interest in the Allegan county farm, which was erroneously assigned to her by the order of distribution, the devolution of the estate of Eliza A. Jones will be accom-

plished in accordance with the terms of her will when properly construed. This course will therefore be followed. A decree will be entered dismissing the bill of complaint, with costs to the appellant.

KUHN, C. J., and STONE, BIRD, MOORE, and STEERE, JJ., concurred with BROOKE, J.

OSTRANDER, J. (*concurring*). The source of defendant's title to the land is her mother. As to an undivided one-half interest she acquired it by inheritance; as to the other half by quitclaim deed from the other heir. The will of the mother cannot be construed as a devise of the land, because it does not devise it. And there is also to be considered the unappealed-from order of the probate court which plainly is based upon the finding that the land was not devised. The doctrine of construing wills according to a discovered intention of the testator cannot be properly carried so far as to find in a will a devise of land which is not expressly or impliedly described or referred to therein. Defendant's title, I think, must be rested upon her quitclaim deed, as to an undivided one-half interest in the land. Unless it was secured by fraud, the quitclaim is good. I find that it was executed because it should, in equity and good conscience, have been executed, in view of the contract referred to in the opinion of Justice BROOKE, and the mutual dealings of the parties. Equity will not aid plaintiff to revoke and recall an act which conscience demanded of her, which executed an understanding to which she was a party and a purpose of her ancestor of which she was advised, and which equity approves. I concur, therefore, in reversing the decree and dismissing the bill of complaint.

PERSON, J., did not sit.