On the application for rehearing, it was pointed out that, in addition to the question of law passed upon in the opinion rendered (259 Mich. 499), there was also a controlling question of fact which we failed to review. Reconsideration of the record sustains this assertion. We did not review the finding of the circuit judge that the paper presented by appellant as a codicil to Mrs. Henry's will is in fact only a letter to her attorney, and was not executed by her animo testandi. The contention of appellees on this rehearing is thus stated in their brief:
"Mrs. Henry (the deceased) requested only that a letter be written. She did not request any witnesses. She never knew that any other persons signed it as witnesses. She never saw it after it was witnessed. She never called it anything but a letter. In form it was only a letter when she last saw it."
On this phase of the case, the only living persons present and having knowledge of the signing and witnessing of the letter are the two witnesses thereto, *Page 414 
Mrs. Yeager and Mrs. Whiting; the former was the attending nurse and the latter a neighbor. Appellees in support of their contention were compelled to rely largely upon the testimony of these witnesses. To say the least, neither of these two witnesses was unfriendly to appellant. Mrs. Whiting wrote the letter on a typewriter. Four days later, according to Mrs. Yeager's testimony, Mrs. Henry, in the presence of only Mrs. Yeager and Mrs. Whiting, made her cross upon the letter in connection with which Mrs. Yeager signed Mrs. Henry's name in her presence, and then in an adjoining room connected with an archway Mrs. Yeager and Mrs. Whiting subscribed their names as witnesses. The letter was thereupon placed in Mr. Henry's hands and mailed to decedent's attorney. A careful reading of this record, and careful consideration of the contents of the letter itself, fail to disclose any evidence of an intent on the part of Mrs. Henry that this instrument should be testamentary in character. She did not declare it to be such, neither is there any testimony that she requested any one to witness it as a testamentary instrument. Instead, the only fair and reasonable conclusion is that Mrs. Henry had the letter prepared as a communication to her attorney advising him of a change she wished to make in the testamentary disposition of her estate, and that she wished him to change her will accordingly. The attorney received the letter, construed it in this manner, acted under the directions given to him, but reached Mrs. Henry too late for the execution of a modified will.
We cannot quote all the record which tends to throw light upon whether Mrs. Henry intended to do anything other than communicate by letter with *Page 415 
her attorney relative to changing her will but the following extracts are somewhat illuminating and disclose quite conclusively that at the time all parties concerned regarded the instrument as a letter, not a codicil. Mrs. Yeager testified:
"Yes, I did not consider it a will; but a letter."
And further that Mrs. Henry said to the witness:
"I want him (Mr. Henry) to go and mail that letter."
Again this witness testified:
"She (Mrs. Whiting) said she told him (Mr. Henry) about theletter she had written."
And that:
"She (Mrs. Henry) was happy because she had written theletter to Mr. Speed (the attorney) to change that will. * * * The only thing that Mrs. Henry asked Mrs. Whiting to do was to write the letter to Speed."
Mrs. Whiting testified:
"I had gone over there to see how she (Mrs. Henry) was, and she asked me point blank, would I write to Mr. Speed, and she told me what to write. She said, 'I was mad when I made that will six years ago, and I want to change it;' and she told me what change she wanted, just like that letter says. I said, 'Are you sure that is what you want? Now, let me understand, I will write the letter as you want it.' I said, 'I will write the letter, but let me understand you and you understand me.' "
On cross-examination the witness again testified that she (Mrs. Henry) said:
" 'Mrs. Whiting, will you do something for me?' or 'Will you write a letter for me?' " *Page 416 
Later on cross-examination she testified:
"Mrs. Henry asked me to send that letter to Mr. Speed. * * * She asked me to write to Mr. Speed and tell him that she wanted her will changed and she told me how to have it changed, what to write to him and I repeated it."
When the communication was received by Mr. Speed, who as attorney for Mrs. Henry had drafted her former will, he also considered it merely a letter directing him to prepare a modified will. He testified:
"On the afternoon of September 25, 1929, I received aletter purporting to have been written by Mrs. Henry, theletter introduced in evidence here. I read it, acted on its instructions, prepared another will and left for Point DuChene (where Mrs. Henry lived), at six that night to have it executed."
From the foregoing it appears that Mrs. Henry and every other person who had knowledge of the contents of this instrument considered it as a letter, and it was consistently referred to as such. As to its being witnessed, a fair inference from the record is that this formality was deemed necessary because Mrs. Henry signed the letter by placing her cross thereon rather than signing her name in full. Mrs. Whiting testified:
"I told Mrs. Yeager if she (Mrs. Henry) could write, let her sign her name there; if she couldn't write, to witness her signature."
The extent of the showing on this phase of the case is that Mrs. Yeager testified Mrs. Whiting was sent for to participate in the execution of the document because Mrs. Yeager knew nothing about the execution of such a paper. In any event, it conclusively appears from the record that witnessing this instrument, if not wholly without the knowledge of *Page 417 
Mrs. Henry, was without any request on her part. Mrs. Yeager testified:
"Q. Did she say anything about your witnessing it? She did not ask you to witness it?
"A. No."
Mrs. Whiting testified that she said to Mrs. Yeager:
" 'We will have her (Mrs. Henry) execute it and then have him (Mr. Henry) take it to the post office to mail.' So we fixed it up. She (Mrs. Yeager) signed Maggie Henry's name there and Maggie Henry made her mark. * * * Then I said, 'Now, we will put on our names as witnesses.'
In reviewing the record we have not overlooked the fact that Mrs. Whiting, over objection, testified to her own conclusion that in signing the document Mrs. Henry knew or thought she was making a testamentary disposition of her property; and also that this witness testified Mrs. Henry "saw us signing" it. Notwithstanding this testimony, we think upon this record it clearly and convincingly appears that the instrument in question was intended by Mrs. Henry merely as a communication to her attorney instructing him to prepare a modification of her will. This being so, it must be held to be such and only such. The mere fact that two other persons of their own volition subscribed their names as witnesses did not convert the letter into a codicil. The issue of fact presented must be determined in the light of the rule of evidence which in a note, 54 A.L.R. p. 932, citing cases, is thus worded:
"It is generally conceded that in addition to the usual burden of proof resting upon the proponent of a will in probate proceedings, it is also presumed that an informal instrument, such as a letter, not purporting on its face to be a will, was not executed animo testandi. 1 Redfield, Wills (4th Ed.), 167." *Page 418 
There is no testimony in this record, if fairly construed, which tends in any way to show that Mrs. Henry signed this letter with any intention that it should operate as a will, or that she had any knowledge or in any way acquiesced in the witnessing of the document by Mrs. Whiting and Mrs. Yeager as a will. The following is a fitting statement of the law applicable to the question here presented:
"It is necessary, however, that the instrument, whatever it may be, whether a note, settlement, or deed, should have been designed to operate as a disposition of the testator's property. That identical paper must have been intended to take effect in some form. It must have been written animo testandi.
In the language of Judge Cabell, 'A paper is not to be established as a man's will merely by proving that he intended to make a disposition of his property similar to or even identically the same with that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will. Unless it does so appear, the paper must be rejected, however correct it may be in its form, however comprehensive in its details, however conformable to the otherwise declared intentions of the party, and although it may have been signed by him with all due solemnity.'
"This doctrine is sound in principle, is commended by its intrinsic justice and wisdom, and is fully sustained by the authorities. Sharp v. Sharp, 2 Leigh (29 Va.), 249; Hocker v.Hocker, 4 Gratt. (45 Va.) 277; Waller v. Waller, 1 Gratt. (42 Va.) 454 (42 Am. Dec. 564); Pollok v. Glassell, 2 Gratt. (43 Va.) 439." McBride v. McBride, 26 Gratt. (67 Va.) 476.
Careful consideration of the issue of fact stressed upon this rehearing forces the conclusion, as held by the trial judge, "that it was not the intention of Mrs. Henry to have this paper operate as a will disposing *Page 419 
of her property after death." The disallowance of this instrument as a codicil to the former will of Mrs. Henry was proper and should be affirmed.
One other phase of our former opinion should be noted. As applied to the factual situation disclosed on this rehearing, I am not in accord with the following statement of law embodied in our former decision herein:
"It (the letter) is a valid will unless there is something in its language showing that she did not intend it to operate as such but intended it merely as an instruction to her attorney in redrafting her former will. Her intention must be deducedfrom the paper itself."
On the issue of fact here presented, that is, whether Mrs. Henry intended this letter as being a present testamentary disposition of her property, a court is not limited to consideration of the contents of the instrument. Instead, extrinsic testimony is admissible. Lawyer v. Smith, 8 Mich. 411
(77 Am. Dec. 460); Harring v. Allen, 25 Mich. 505. To hold otherwise would permit perpetration of fraud and bar the means of exposure. The quoted statement of law is applicable to a controversy as to the construction of a will after its testamentary character has been admitted or established. Wales
v. Templeton, 83 Mich. 177; Stebbins v.Stebbins, 86 Mich. 474; Stender v. Stender, 181 Mich. 648. But the rule of law is not applicable to the issue of fact presented in a case wherein the testamentary character of the instrument is challenged.
On rehearing, the judgment entered in the circuit court should be affirmed, with costs to appellees.
CLARK, POTTER, SHARPE, FEAD and BUTZEL, JJ., concurred with NORTH, J. *Page 420