## Martin, et al. v. Thompson, Executor, et al.

(Decided March 25, 1921.)

## Appeal from Washington Circuit Court.

1. Wills—Intention of Testator—Construction.—The cardinal rule for the construction of wills is to ascertain the intention of the testator as gathered from the language employed in the whole will and construe the language so as to carry out that intention. The literal and grammatical construction of independent sentences or clauses in a will, if they can possibly be made to do so, should surrender to the general purpose and intention of the testator as plainly manifested in his entire will.

2. Wills—Intention of Testator—Construction.—Where a will devised only a life interest in one-fourth of the property of testatrix, to each of three of her four children, and provided that all children to whom advancements had not been made should be "made equal with advancements": Held that the equality mentioned in the will referred to the quantity or portion which each of the children should take and not to the title or estate which each of them should have in their portion, which interpretation is in accord with the general purpose and intention as manifested by the entire will.

POLIN & POLIN and J. W. S. CLEMENTS for appellants.

W. C. & CHAS. M. McCHORD and MARSHALL DUNCAN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Kate E. Litsey died testate a resident of Washington county, and she owned both personal property and real estate, which she disposed of by her will. She left surviving her four children, three daughters and one son, all of whom were married, but only one daughter, Mrs. Thompson, and the son, Berry L. Litsey, had children; the other two daughters, Mrs. Hopper and the appellant, Mary L. Martin, had no children and they

were of such an age as that they would possibly never have any. This suit was brought by the husband of one of the daughters, Sterling P. Thompson, who was executor of the will, and his wife against the other children of the testatrix, the children of the plaintiffs, and the children of Berry L. Litsey, seeking a construction of the will of the testatrix and praying for a sale of the land for division among the devisees according to the terms of the will, it being alleged that the real property devised could not be divided in kind without materially impairing its value.

The first paragraph of the will provides for the payment of debts, and the second paragraph says: "I want all of our (my) property both personal and real to be divided equally between my four children after they have been made equal with advancements. Mary L. Martin to receive one-fourth interest with life interest to her husband. Should she die without children the property, real or personal, to revert to the heirs of other children of this will at the death of her husband." The third paragraph devised one-fourth of all of the property of the testatrix to her daughter, Nellie Thompson, absolutely. The fourth paragraph devised a one-fourth interest in all of the property of testatrix to her daughter, Mrs. Hopper, for life and after her death to her husband for his life, and after his death to the grandchildren of the testatrix; while the fifth paragraph gave to David R. Litsey a one-fourth interest in all of the property of testatrix during his life and after his death to his children. Other paragraphs of the will are not pertinent to the question presented.

The court referred the cause to the master commissioner to ascertain and report the state of the account of the executor, and the amount of advancements made by the testatrix during her lifetime to any of her children, and to which ones made, and to report the total amount due each devisee from the proceeds of the personalty and realty, the latter of which was ordered sold. The commissioner reported that Mrs. Hopper had been advanced $6,000.00 and D. R. Litsey had been advanced $1,351.83, making total advancements of $7,351.83, and that the proceeds of the realty and personalty on hand for distribution was $37,359.69. To this was added the total advancements, making the sum of $44,711.52 for distribution, or $11,177.88 to each child of the testatrix.

The life interest of Mrs. Martin, according to the mortality tables, in the latter sum was reported to be $8,176.61, which sum the commissioner recommended be paid to her. The interests of Mrs. Hopper and Berry L. Litsey were calculated upon the same basis and from the present value of their respective life interests there was deducted the amount of advancements made to each of them. Mrs. Martin filed exceptions to the report upon the ground that the commissioner had not followed the terms of the will in allotting to her the portion of the estate devised to her in this: that she should have, under what she claims was the true construction of the first part of partgraph two of the will, been first paid $6,000.00 absolutely so as to equalize her with Mrs. Hopper, to whom the testatrix had advanced that amount, and that her life interest should have been calculated on the remainder of her one-fourth, after deducting that sum, and not on her total one-fourth including that sum. The court overruled her exceptions and confirmed the commissioner's report and she questions the propriety of that order by prosecuting this appeal. Her life interest was, under the tables referred to, calculated at 73.15% and the amount involved is 26.85% of $6,000.00, or the sum of $1,611.00.

The question presented is a narrow one, and it is this: what did the testatrix mean when she said in the second paragraph of her will that she wanted her property "both personal and real to be divided equally between my four children after they have been made equal with advancements"? It is seriously contended by counsel for Mrs. Martin that the sentence referred to in the second paragraph of the will literally and grammatically means, that before any division of the estate is made each devisee must receive a sum equal to the highest advancement that had been made by testatrix to any of them. We must confess that there is considerable room for that contention were we to confine ourselves exclusively to that sentence in the will and shut our eyes to all other parts of it.

It has often been reiterated by this court that the cardinal rule for the interpretation of wills is to ascertain the intention of the testator from the language employed by him, and administer that intention, but it has, with equal unanimity been held that the lan-

guage to which the court must look, in order to ascertain the intention of the testator, is that found in the *entire* will and not confine the investigation to the language of a *particular* sentence, clause or paragraph in the will. These rules are so fundamental that we deem it unnecessary to do more than to refer to a few of the later cases from this court, which are: Marquette v. Marquette, 190 Ky. 182; Shields v. Shields, 185 Ky. 249; Prather v. Watson, 187 Ky. 709; Wickersham v. Wickersham, 174 Ky. 604; Hughes v. Cleveland, etc., Asylum, 184 Ky. 461; Greenwell v. Whitehead, Idem., 74; and Sauer v. Taylor, Idem., 609.

It is a further rule of equally constant application that the settled and fixed general purpose and intention of the testator, as plainly manifested from the language of the whole will, should be upheld and administered and not allowed to be defeated by a strict and literal construction of some isolated clause or sentence found in some parts of the will. In other words, the general scheme and purpose of the testator as contained in the whole of his will must prevail over strict grammatical constructions of isolated clauses and sentences, and especially so if to do otherwise would result in entirely defeating the testator's general scheme and intention in making disposition of his property.

Applying the foregoing rules to the will under consideration, there can be nothing clearer than that the testatrix in this case entertained in her mind, and expressed in her will, the purpose and intention of giving to all of her children, except Mrs. Thompson, only a life interest in their proportionate part of her estate left at her death. The will says so in almost every paragraph in it; and, were we to adopt the contention of counsel for Mrs. Martin, it would result not only in defeating *pro tanto* such plainly and unequivocally expressed intention, but under possible conditions it would result in *wholly* defeating such intention; for, if the testatrix before her death had advanced to any of her children a sum equal to one-fourth of her entire estate, the others, under appellant's contention, would absorb all the estate in being made equal with that one, and the will of the testatrix would then be rendered nugatory, since the actual result would be the same as if no will had been executed. We can not believe that it was ever contemplated by the testatrix in this case that any such result should happen. On the contrary we are con-

vinced that what she meant by the language employed in paragraph two of her will was that the *equality* expressed in that paragraph concerning advancements refers to the *quantity* of her property which each of her children would take under the will, and not to the extent of interest, or the *title* or *estate* which each of them took in their respective portions.

This was the view entertained by the learned trial judge and his judgment in accordance therewith meets our approval, and it is affirmed.