Complainant seeks a decree for specific performance of a contract for the sale of certain real estate, which defendant resists, on the ground that complainant is unable to deliver a marketable title, free and clear of encumbrance, as provided for in the agreement of sale entered into between the parties.
There are no disputed questions of fact and the question for decision is a proper construction of the will of John W. Carl, dated January 1st, 1895, and the codicil dated December 29th, 1900. Testator died January 7th, 1903, and the will and codicil were duly admitted to probate on February 7th, 1903.
There is nothing before the court to show the financial position of testator, either at the time of the execution of the will and codicil or at the time of his death, in fact, no testimony of any kind that might furnish aid in a construction of the will and codicil, with the result that we must be controlled exclusively by that which the testator has said therein. These documents show that the author thereof was unskilled both in the legal as well as the educational sense, as is demonstrated by the following:
"My last will I John. W. Carl of Vineland Cumberland Co
State of New Jersey, do make this will to Protect my three Heirs and if Possible Secure to them A Home So Long as they Live
I appoint my wife Lenora. L. Carl my Executrix and give to Her all my Personal Property and real Estate So Long as She Lives She is to Settle up the Estate. *Page 454 
At Her death it goes to my Daughter Elona A Bartlett
At Her death it goes to Her Son Nelson O Bartlett
At His death it goes to the First Methodist Episcopal Church of Vineland Corner of 7th and Landis Av they to Pay tax insureance and repairs from the rents
All that is Left over and above Expenses must be used to Feed and Clothe the Poor it is promised you shall Have them with you
Always
to make this Home or Homestead No 526 Elmer Street more Secure My Heirs must not Sell or Exchang must not mortgage or Lein they must not place any incumberance on this Estate this Property Shall not be responsible for any debts of their contracting
They must Keep the tax and insurance paid up and Keep the House in good repair"
"I John W Carl
Do make this codicil to My will, to set aside Seven Shares of Stock held by the First National Bank of Vineland, for a Special purpose namely the dividends of this Stock is to be used to pay taxes and insurance and repairs on house or homestead No 526 Elmer Street, this Stock Shall not be liable for any debts my heirs may contract when my two heirs are dead this Bank Stock Shall go to the Ladies Home Mission Society of the first M.E. Church of Vineland Corner of Seventh St and Landis Avenue the dividends of this stock is to be used to help feed and clothe the Poor if from any caus my heirs should fail to fulfil the requirements of this will — Some should be appointed to do the business
And I appoint My Wife Lenora L Carl as my Executrix to see to it that this will is placed on record"
All three of the life tenants spoken of by testator as "my heirs" are deceased.
It is quite evident that the predominant purpose of the testator was that expressed in the first paragraph of the will, a home for his wife, his daughter and his grandson, and to that end he devoted all of his property, real and personal, for the consecutive lives of these persons, called by him "my three heirs."
The difficulty starts with the fifth paragraph of the will, wherein testator provides that after the death of all three of his "heirs" the estate, real and personal, "goes to" the "First Methodist Episcopal Church of Vineland * * * they to Pay tax insureance and repairs from the rents," which is followed by the sixth paragraph of the will, which provides, "All that is Left over and above Expences must be used to Feed and Clothe thePoor." *Page 455 
It is contended by complainant that when testator said "they to pay tax," etc., from the rents, he referred to his "three heirs" and not to the church, and that at the death of the last of the "three heirs" the church took the property, real and personal, in fee, and not burdened with the trust to use "All that is Left over * * * must be used to Feed and Clothe the Poor."
Defendants insist that such is not the case, but that the church holds the property in trust, without power of sale.
The province of this court is to construe wills and not make them, and all of the provisions of the will must be taken together so that it may stand in its entirety, if possible; wills must be construed in strict conformity with the testator's intent as gathered from the four corners of the will; it is what the testator said rather than what he meant to say; the predominant idea of testator, if apparent, is heeded against doubtful provisions which might defeat that intention; punctuation, paragraphing or mistake in the use of either, or the use of the singular instead of the plural will not be regarded if adherence thereto produces a result obviously contrary to the testator's intent. These propositions of law, applicable to the present question, are elementary.
A reading of the will and codicil demonstrates that neither is properly paragraphed or punctuated, but even so, there seems to be little difficulty in ascertaining that which testator intended by the language used by him. Both the will and codicil clearly shows that testator wanted to secure a "home" for his wife, daughter and grandson during their consecutive lives. This was the predominant purpose of the testator and he devoted his entire estate, real and personal, to that end. His secondary objective was to provide for the poor after his main objective had been accomplished, when, by reason of the death of his "three heirs" there would be no necessity for a home for them. He realized that long after the death of his "three heirs" there would be necessity to provide for the poor. He said, "it is promised you shall Have them with you Always."
The means adopted by testator to secure a home for his "three heirs" was to prevent them from selling, mortgaging *Page 456 
or encumbering it during their respective lives, and to exempt it from their debts, and having done this, he said, "They must Keep the tax and insurance paid up and Keep the House in good repair." But we find that approximately five years after the execution of the will the testator considered that the maintenance or repair of the home should be further secured and to that end a codicil was executed by him, wherein he caused to be "set aside" seven shares of an unnamed stock, the dividends to be used for that purpose, and he again provided that the stock should not be liable to the debts of "my heirs" and further provided, "if from any caus my heirs should fail to fulfil the requirements of this will — Some should be appointed to do the business." Thus testator endeavored by will and codicil to carry out his main purpose of securing a home to his wife, daughter and grandson, and he then turned to the business of expressing his desires as to the ultimate disposal of his estate, and it seems to me that his intent in that respect is clearly set forth in the will and codicil, provided we do not overlook the fact that testator was not skilled or educated, and provided further that we do not overemphasize the paragraphing or his failure to paragraph. Let us see.
After "securing" to his named beneficiaries a home for their consecutive lives, testator, in the fifth paragraph of the will, provided, "At His death it goes to the First Methodist Episcopal Church of Vineland Corner of 7th and Landis Av they to Pay tax insureance and repairs from the rents."
"All that is Left over and above Expences must be used to Feed and Clothe the poor it is promised you shall Have them with you Always."
It seems to me that the language used by testator, as above quoted, clearly expresses his intention that all of his real and personal estate should go to the church on the death of his last "heir" and that the church should be charged with the maintenance and repair of the "home" and that after deducting the expense thereof from the "rents" that the balance was to be used by the church to feed and clothe the poor. There is nothing that would indicate to me any intention on the part of the testator that his "three heirs" should, during *Page 457 
their lifetime, feed and clothe the poor, and the church have title to the residue of his estate free and clear of any trust after the death of his "three heirs." There is, it seems to me, no other construction which will carry out testator's two-fold purpose as expressed by him, first, a home, and second, the taking care of the poor.
It is argued that when testator said in the fifth paragraph of his will "they to Pay tax insureance and repairs from the rents" that he referred to the life tenants and not the church, otherwise he would have used the pronoun "it" instead of "they." If this insistment were sustained, the devotion of testator's estate to the poor would have terminated at the death of the last life tenant, other than as to the seven shares of stock referred to in the codicil, and the church would not have a fee-simple title to the realty and full ownership of the personalty, other than this stock. It is plain, it seems to me, that this is not the intent of the testator, as he expressed it. When he said "they" to pay taxes, c., he was plainly referring to the church, to which testator had given his estate after the death of the last of his "three heirs." He had finished his reference to the life tenants in the first four paragraphs of his will and created life estates for them, and in the fifth paragraph thereof he was providing for the ultimate resting place of his estate, and he did not again refer to his "heirs" until the succeeding paragraph of the will, wherein he sought to further secure to them the home or homestead by providing against their selling, exchanging, mortgaging or otherwise encumbering it, and further providing that they were to pay taxes and insurance and keep the home in good repair.
It will be noticed that in the fifth paragraph of the will testator directs the church to pay taxes, c., out of the "rents" while in the next to the last paragraph of the will he merely directs his "heirs" to pay the taxes, c., generally, without specifying the source of the moneys wherewith to do so. He evidently realized that the church would naturally rent the home and thus derive an income, and that his "heirs" would occupy it and receive no rents. Of course, he did not command occupancy, but his evident whole purpose was that *Page 458 
it should be occupied as a home during the consecutive lives of his "three heirs."
Testator had in mind the permanent necessity for taking care of the poor, which he said "would be with us always." Surely, with this in view, he did not intend that on the death of his last "heir" the only portion of his estate to be dedicated to the poor was the stock mentioned in the codicil, and particularly is this so when we consider that the stock, "when my two heirs are dead" is given to the Ladies Home Mission Society "to be used to help
feed and clothe the Poor." In other words, in conjunction with the funds to be so used by the church, as directed in the will. Both the will and codicil point unmistakably, it seems to me, to the caring for the poor by the church and the mission in perpetuity after the death of all of the life tenants.
As to the codicil, it is apparent that excepting as it may throw some light on the construction of the will, its construction could not be decisive of the question before the court. It disposes of personalty and not the realty.
It seems to me that the codicil was intended by the testator as a further safeguard in his efforts to protect his "heirs" and secure them a home. He had in his will given to each "heir" for his or her life his entire estate, and protected it against their possible desire to sell or encumber it, and had also directed them to pay the maintenance charges of the home, but even so, by his codicil he "set aside seven shares of stock" for the "special purpose" that the dividends be used to pay maintenance charges of the home. He did not appoint a trustee for this stock but he did provide that "if from any caus my heirs should fail to fulfil the requirements of this will — some should be appointed to do the business."
It is argued that the intention of the testator was to appoint the Vineland Trust Company as trustee. If so, he failed so to do in the language used by him.
It is perhaps of some significance that in the codicil testator provided that the seven shares of stock, after the death of all "heirs" was to go to the Mission Society "to be used to help feed and clothe the poor" and as heretofore pointed out, I believe that testator used the word "help" as connected with *Page 459 
the gift and devise to the church of his real and personal estate to the end that it "feed and clothe the poor." Of course, testator may have used the word "help" in realization that his entire estate was not sufficient to take care of all of the poor. However, it seems to me that the codicil in no way indicates a different construction of the will than that heretofore discussed.
Under the foregoing findings, complainant is unable to convey a marketable title and the bill must be dismissed.