# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ERNEST W. HAMADY TRUST.

---

CHARLES HAMADY,

Petitioner-Appellant,

v

BRUCE HAMADY,

Respondent-Appellee,

and

CAROLE HAMADY and CYNTHIA HAMADY,

Appellees.

UNPUBLISHED
July 30, 2015

No. 319900
Genesee Probate Court
LC No. 12-193847-TV

---

*In re* SONA I. HAMADY TRUST.

---

CHARLES HAMADY,

Petitioner-Appellant,

v

BRUCE HAMADY,

Respondent-Appellee,

and

CAROLE HAMADY and CYNTHIA HAMADY

Appellees.

No. 319901
Genesee Probate Court
LC No. 12-193846-TV

-1-

Before:  MARKEY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Petitioner, Charles Hamady, appeals by right the probate court's order interpreting the beneficiary trusts at issue in this case that a beneficiary's request for distribution of principal under Article VII, § (C)(1) of the trusts are subject to the trustee's discretion as guided by other provision in the trusts and "not limited by the power to postpone" under Article XIII, § (M). Because we find persuasive petitioner's arguments based on the unambiguous wording of the trusts, and respondent's arguments to the contrary unpersuasive, we reverse.

Petitioner and respondent are the sons of Ernest and Sona Hamady.  In 1979, Ernest and Sona (the settlors) established separate revocable declarations of trust:  The Ernest W. Hamady Trust (Ernest trust) and the Sona I. Hamady Trust (Sona trust) (collectively "the trusts").  The trusts, which are essentially identical, were amended and restated on January 26, 2007.  The trusts were established for the benefit of Ernest and Sona during their lifetimes, for the benefit of the surviving spouse, and upon the deaths of Sona and Ernest, for the benefit of their four children: Bruce, Charles, Carole, and Cynthia.  After the death of the settlors, the remaining principal of the trusts (after other obligations were satisfied) was to be divided into five equal shares, one for each of the four children, i.e., the beneficiary trusts, and one special benefits trust.[1]  The trust provision at issue in this appeal relates to the right of the child-beneficiaries to make written requests to withdraw principal from their beneficiary trust.

Ernest died on January 14, 2010, and was survived by Sona, who died shortly thereafter on March 24, 2010, survived by all four of the children.  Pursuant to the amended trust documents, Bruce is the sole successor trustee for both trusts.[2]

Article VII, § (C)(1) of the trusts, at issue in this appeal, provides as follows:[3]

> (C) **Powers of Withdrawal**.  Subsequent to the Division Date and after the establishment of each separate trust named for a Child, the Trustee is authorized to distribute Trust property as follows:

---

[1] The special benefits trust was established primarily for the benefit of one of the siblings because of anticipated additional health care needs.

[2] The trusts only differ with respect to successor trustees.  The Ernest trust appointed Sona as successor trustee, and upon her death, Bruce and the State Bank, as successor co-trustees.  After Ernest died, Sona amended her trust to provide for Bruce as the sole successor trustee.  Upon Sona's death, the State Bank declined to accept its appointment as a successor co-trustee of the Ernest trust, leaving Bruce as the sole successor trustee of both trusts.

[3] "Child" is defined in Article I, § C(2) as a child of Ernest and Sona: Charles, Bruce, Carol, and Cynthia.  The "Division Date" is the date of death of the date of the survivor of Ernest and Sona. Article VI, § C.

-2-

1. **Distribution to Child**. At or after the Division Date, the Trustee is authorized (but not required based upon *power to postpone* distributions as herein set forth) to distribute to the Child such amounts of the principal of the Trust named for the Child, even to the extent of exhausting principal, as the Child may from time to time request by written instrument delivered to the Trustee during the life of the Child. [Emphasis Added.]

Other than in the table of contents, the words "postpone" or "postponement" appear in only one other place in the trust documents, Article VIII, § (M), which provides:

M. **Postponement of Distribution for Benefit of Beneficiary.** Notwithstanding any of the provisions of the Trust to the contrary (except provisions pertaining to the "Rule Against Perpetuities"), in addition to the provision of the paragraph entitled "Spendthrift", Trustee of each Trust hereunder, other than any who is also a present or contingent beneficiary of that Trust, shall have the *power to postpone* any corpus distribution (including distributions pursuant to the exercise of a *right of withdrawal*) *otherwise required* to be made from that Trust to any one or more of its beneficiaries upon or after the beneficiary's *exercise of withdrawal right* or attainment of a specified age or the death of a third person (and to postpone to that extent the termination of such Trust which might otherwise be required) if such Trustee, in the sole but *reasonably exercised discretion* of Trustee, determines that, in view of my apparent overall original intent, there is *a compelling reason to postpone* such distribution, such as a beneficiary's serious disability, a pending divorce (including the possibility that the spouse of a beneficiary or some person other than the beneficiary will receive the benefits from a proposed distribution)[,] potential or pending creditor claims (possibly relating to such distribution), a serious tax disadvantage to such beneficiary (or his or her family) if such distribution were made, or *similar substantial cause*. Any such postponement of distribution may be continued by such Trustee, in whole or in part, from time to time, up to and including the entire lifetime of the beneficiary. Which such postponement continues, all of the other provisions previously applicable to such Trust shall continue in effect except (1) any power of appointment previously applicable to the otherwise distributable corpus shall be exercisable only with the approval of such Trustee and (ii) such beneficiary shall only receive distribution from time to time of such amounts from such corpus and the income there from as such Trustee, in the sole discretion of Trustee, deems appropriate in the best interest of such beneficiary. [Emphasis Added.]

On June 18, 2012, Charles filed a petition seeking to have his brother, Bruce, removed as the trustee, or, in the alternative, appointment of a co-trustee or special fiduciary. While that petition was pending, Charles, on September 23, 2013, through a letter his attorney wrote to Bruce's attorney, exercised his "right of withdrawal" pursuant to Article VII, § (C)(1), and specifically, requested to withdraw $5,000.00 per month from his beneficiary trusts beginning October 1, 2013, and monthly thereafter until Charles provided notice to the trustee to stop or the trust was exhausted. Bruce responded by letter dated October 23, 2013, denying Charles's written request for distribution. Bruce asserted that the beneficiary trusts had not yet been

established by the allocation of assets among the various trusts. Bruce noted that monthly payments on an asset outside of the trust in which Charles held an interest would likely increase beginning in December 2013. Finally, Bruce asserted that Charles's contention that he "has a right to make a withdrawal under his Beneficiary's Trust and to withdraw his entire Trust share as stated in your letter is not correct. Any distributions from the Beneficiary's Trusts are subject to the Trustee's discretion under the Trust Agreements."

On November 22, 2013, Charles petitioned the probate court pursuant to MCL 700.7201(3)(e)[4], for an interpretation of the trusts regarding the "powers of withdrawal" under Article VII, § (C) of the beneficiary trusts. Specifically, Charles sought a judicial determination that once a beneficiary makes a written request for distribution from that child's beneficiary trust, the trustee may refuse to honor the request only if the trustee had a compelling reason to postpone the distribution as specified in Article XIII, § M. Because Bruce asserted no such compelling reason exists, and Charles denied any existed, Charles contended that the trusts obligated Bruce to honor Charles request for distribution, even to the point of exhausting the trusts' principal. Bruce responded to the petition by again asserting that all distributions of principal under Article VII are within the trustee's sole discretion guided by the settlors' intent as expressed in Article VII, § B(3)(b) that such distributions be for the health, education, support and maintenance of the child beneficiary.

Following a hearing, the probate court ruled from the bench in favor of Bruce's interpretation of the trusts. The court, stating it was "reading the [trust] document[s] as a whole," but without referring to any specific language in the trusts, determined that the trustee was given "a good deal of—of a [sic] discretion." The court noted that the only place that the trustee "wasn't given sole, uh, discretion is this VII (C)," but ruled that the settlors "just used that as an opportunity to highlight to the Trustee what considerations that, uh, he was to take a look at in making a decision about that, but . . . he was still given sole discretion." Thus, the court ruled from the bench that while Charles had a right to request a distribution of principal, Bruce, as trustee, had the discretion to deny the request. Charles's only remedy, the court ruled, would be to petition the court to review whether there was an abuse of discretion. In its oral ruling from the bench, the court did not address the trustee's "power to postpone" referred to in both Article VII, § (C) and Article VIII, § (M). The probate court's written orders with respect to both the Ernest trust and the Sona trust, as noted already, provided that the trustee's exercise of discretion with respect to a beneficiary request for a distribution under Article VII, § (C) was "not limited by the power to postpone" under Article XIII, § (M). Petitioner appeals by right pursuant to MCR 5.801(B)(2)(d) and MCR 7.203(A)(2).

"We review the trial court's interpretation of the trust agreement de novo, as a question of law." *In re Herbert Trust*, 303 Mich App 456, 458; 844 NW2d 163 (2013). If fact finding is necessary, the court's findings are reviewed for clear error. MCR 2.613; *In re Perry Trust*, 299

---

[4] MCL 700.7201(3)(e) provides that an interested person may invoke the court's jurisdiction to "[d]etermine a question that arises in the administration or distribution of a trust, including a question of construction of a trust."

Mich App 525, 529; 831 NW2d 251 (2013). In this case, fact finding was neither necessary nor permitted because the parties and the probate court agreed the trust documents were unambiguous. The settlor's intent controls the meaning of a trust, which unless ambiguous, is determined by the trust language itself without considering extraneous evidence. *Id*. at 530; *Detroit Wabeek Bank & Trust Co v City of Adrian*, 349 Mich 136, 143; 84 NW2d 441 (1957); *In re Reisman Estate*, 266 Mich App 522, 527; 702 NW2d 658 (2005). The mere fact that the parties disagree regarding the proper meaning of the trusts' terms does not create ambiguity. See *Detroit Wabeek Bank*, 349 Mich at 143 (the fact that competing litigants differ in their views regarding the proper construction of an instrument does not render its terms ambiguous); see also *Toll Northville, Ltd v Northville Twp*, 480 Mich 6, 15 n 2; 743 NW2d 902 (2008) (a term is ambiguous when it is equally susceptible to more than a single meaning).

Petitioner argues that the probate court erred when it interpreted the provisions of the trust documents and concluded that any request for distribution from the beneficiary's trusts under Article VII, § (C)(1), was subject to the discretion of the trustee. Petitioner argues that once a child makes a written request for distribution from his or her beneficiary trust, the trustee must grant the request unless the trustee reasonably determines pursuant to Article XIII, § M that "there is a compelling reason to postpone [the requested] distribution[.]" Petitioner further asserts that there are only limited circumstances, as described in Article XIII, § M, that would amount to a "compelling reason" or a "substantial cause" by which the trustee could postpone, but not deny, a beneficiary's written request for distribution. Because petitioner's interpretation is consistent with the plain and unambiguous language of sections VII(C) and XIII(M), and not inconsistent with other trust provisions, we conclude that petitioner's interpretation of the trust documents is correct.

A review of the specific language of the trusts compels us to conclude that the probate court's interpretation of the trust documents is incorrect. Article VII of the trusts governs beneficiary's trusts. Without a request by a beneficiary, Article VII, § (B)(1) requires the trustee ("shall pay to or for the benefit of the Beneficiary"), to distribute as much of the trust principal the trustee "determines necessary for the reasonable health care, education, support and maintenance of the Beneficiary and the Beneficiary's immediate family . . . ." Respondent-trustee's interpretation would superimpose this standard on Article VII, § (C), and essentially render it meaningless except for permitting a beneficiary to make a written request for distribution of principal. But a beneficiary's action of requesting a distribution of principal is not controlled by the trust document; a beneficiary may always make a written request to the trustee for distribution regardless of the existence of Article VII, § (C). While we must read a trust as a whole, all provisions of the trust must be given effect and harmonized if at all possible. *In re Raymond Estate*, 438 Mich 48, 52; 764 NW2d 1 (2009); *In re Bem Estate*, 247 Mich App 427, 434; 637 NW2d 506 (2001). Further, we must not over scrutinize the clear, plain language of the trusts such that we rewrite them. *In re Reisman Estate*, 266 Mich App at 527; *In re Coe Trusts*, 233 Mich App 525, 535; 593 NW2d 190 (1999).

Despite already providing in Article VII, § (B) for mandatory distribution of principal under the standards of that section, the settlors conferred a "power of withdrawal" on child beneficiaries in Article VII, § (C). We note that under the interpretative rules of the trusts, Article XV, § (B)(3), captions are intended for convenience and do not limit or amplify substantive provisions of the trusts. Nevertheless, the settlors have inextricably linked Article

-5-

VII, § (C)(1) with Article XIII, § (M) through the use of the phrase "power to postpone," which appears nowhere else in the trusts. When these two provisions are read together, their plain terms show that Article VII, § (C)(1) creates on the part of a child beneficiary a right of withdrawal of principal "even to the extent of exhausting principal[.]" While it is true that phrase "Trustee is authorization" to grant the beneficiary's request for distribution implies discretion, the phrase must be read in light of the parenthetical material that follows: "(but not required based upon power to postpone distributions as herein set forth)[.]" Furthermore, Article XIII, § (M) clearly refers to provisions in Article VII, § (C) as a "right of withdrawal" that is "otherwise required to be made" but for the trustee's reasonable exercise of the "power to postpone" as set forth in those sections.

We agree with petitioner that the phrase "based upon power to postpone" is a specific linkage to Article XIII, § (M), which serves as a base and limit of the trustee's discretion to postpone honoring a beneficiary's written request for withdrawal. Dictionary definitions may be consulted to ascertain the plain and ordinary meaning of undefined terms in a trust. *In re Kostin Estate*, 278 Mich App 47, 54; 748 NW2d 583 (2008). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "**base** *vt* **based**; **basing**" as "**1**: to make, form, or serve as a base for [and] **2**: to find a base or basis for - usu. used with *on* or *upon*[.]" The plain language of Article VII, § (C)(1) thus requires that any refusal of the trustee to honor the written request of a child beneficiary must be based on the trustee's "power to postpone" as set forth in Article XIII, § (M). Contrary to respondent's argument, the phrase "as herein set forth" does not limit the meaning of "power to postpone" to the discretion otherwise granted to the trustee in Article VII, § (B). Rather, because "power to postpone" is only used in Article VII, § (C) and Article XIII, § (M), the phrase "as herein set forth" specifically refers to Article XIII, § (M).

Under the plain terms of Article XIII, § (M), it is not the beneficiary who must justify his or her request for distribution of principal but the trustee who must invoke the "power to postpone" the requested distribution of principal by determining through "reasonably exercised discretion" that "there is a compelling reason to postpone such distribution." Article XIII, § (M) provides examples of possible "compelling reasons" being "a beneficiary's serious disability, a pending divorce (including the possibility that the spouse of a beneficiary or some person other than the beneficiary will receive the benefits from a proposed distribution)[,] potential or pending creditor claims . . ., [and] a serious tax disadvantage to such beneficiary (or his or her family) if such distribution were made, or similar substantial cause." We note that this last example cannot relate to a possible future estate planning concern of the child beneficiary as the settlors' plain words require that the distribution itself cause the "serious tax disadvantage," not the distribution together with the speculative effect of estate tax law at the time of the beneficiaries' death.

Similarly, we reject respondent's argument that petitioner's reading of Article VII, § (C) is incorrect because it would create a general power of appointment under the Internal Revenue Code, 26 USC 2041, and its regulations, with estate tax consequences on the death of a child beneficiary. While the settlors established their trusts with the clear intent to minimize estate taxes that would be imposed on their deaths so as to maximize the distributions of their estate to their children, this tax avoidance intent cannot override the plain terms of the trusts that grant the child beneficiaries the "right of withdrawal" with respect to principal subject to the trustee's reasonably exercised "power to postpone" upon the finding of a "compelling reason" or "substantial cause" as outlined in Article XIII, § (M).

For the same reason, the so-called four-corners doctrine and the alleged overall intent of settlors cannot be employed to impose conditions on the "right of withdrawal" that the settlors chose not to include or apply to Article VII, § (C) or Article XIII, § (M). First, the settlors intent stated in Article VII, § (B)(3) applies by its plain terms to "[t]he foregoing," i.e., the Article VII, § (B) provisions for distribution of principal at the trustee's discretion. Further, the four-corners doctrine requires that the intent of the settlor of an unambiguous trust must be discerned from the language of the trust itself and not from extrinsic evidence. *In re McPeak Estate*, 210 Mich App 410, 412, 534 NW2d 140 (1995); see also *In re Perry Trust*, 299 Mich App at 530. It is a perversion of the four corners doctrine to employ a perceived overall intent of the settlor to rewrite the unambiguous terms of the trust. *In re Reisman Estate*, 266 Mich App at 527.

We reverse and remand for any necessary further proceedings consistent with this opinion. As the prevailing party, petitioner may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Stephen L. Borrello